AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

DEC 1 8 2018

DOUGLAS F. YOUNG, Clerk
By _____
Deputy Clerk

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )      Case No.  18 Cm 117
)
Google, Inc. account )
"panterareaper@gmail.com" )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
SEE ATTACHMENT "A," This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:
SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252(a) | Child Pornography |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Gerald Faulkner, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: December 18, 2018

*Judge's signature*

City and state: Fayetteville, Arkansas

Magistrate ERIN WIEDEMANN
*Printed name and title*

## ATTACHMENT A
### Property to Be Searched

This warrant applies to information associated with the Google, Inc. account user:

**"panterareaper@gmail.com"**

that is stored at premises owned, maintained, controlled, or operated by Google, Inc. headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

# **ATTACHMENT B**

I. **Information to be disclosed by Google, Inc. (the "Provider")**

Any e-mails, records, files, logs, or information that has been deleted from Provider account, panterareaper@gmail.com, but is still available to the Provider; or that has been preserved in that Provider account pursuant to a request made under 18 U.S.C. §2703(f) on January 8, 2015. The Provider must disclose to the government the following content or information contained in Google G-Mail account panterareaper@gmail.com

    a.    All e-mails, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent or received, and the size and length of each e-mail;

    b.    All documents containing information that: identifies the account, or account holder, to include full name, physical address, telephone numbers, and other identifiers; reveals session times and duration; establishes the date on which the account was created, and the IP address used to register the account; establishes log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

    c.    The types of service utilized;

    d.    All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

  e. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

  f. Any and all images of children engaged in sexually explicit conduct, including those posed in lascivious manners.

  g. Any and all images of pornography, more specifically including any images of individuals engaged in sexual activity.

## II. Information to be seized by the government

The government is authorized to seize only information described in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of Title 18, United States Code, Sections; 2252(a)(1) [Transportation of Children to engage in illicit activity]; 2252(a)(2) [Receipt and Distribution of Child Pornography]; 2252(a)(4)(B) and (a)(5)(B) [Possession of Child Pornography]; including information pertaining to the following matters:

  a. Email communications between panterareaper@gmail.com, as well any secondary accounts and other e-mail users, known or unknown, where child pornography is traded and/or discussed.

  b. The identity and whereabouts of those persons who created, used, or communicated with the Google G-Mail account identified in Attachment A.

## III. Means of Production

Google, Inc. shall disclose responsive data, if any, by sending to Homeland Security Investigations, C/O: Special Agent Gerald Faulkner at 3419 North Plainview Avenue, Fayetteville, Arkansas 72703 via U.S. Postal Service or another courier service, notwithstanding Title 18 U.S.C. 2252A or similar statute or code.

ATTACHMENT C

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

STATE OF ARKANSAS           :
                            :
                            :   ss. **AFFIDAVIT**
                            :
COUNTY OF WASHINGTON

**Affidavit in Support of Application for Search Warrant**

I, Gerald Faulkner, being duly sworn, depose and state as follows:

I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), currently assigned to the Assistant Special Agent in Charge Office in Fayetteville, Arkansas. I have been so employed with HSI since April, 2009. As part of my daily duties as an HSI agent, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, online enticement, transportation, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2251A, 2422(b), 2252(a) and 2252A. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. I have also participated in the execution of numerous search warrants and arrest warrants, a number of which involved child exploitation and/or child pornography offenses. This affidavit is being submitted based on information from my own investigative efforts as well as information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein.

2.      This affidavit is made in support of applications for a search warrant for

information associated with a certain account that is stored at a premises owned, maintained, controlled, or operated by Google Inc., an electronic mail/Internet service provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043. This affidavit is made in support of an application for a search warrant under Title 18, United States Code (U.S.C.) §§ 2252A, relating to Distribution of Child Pornography; to require Google Inc. to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the electronic mail account (email): **panterareaper@gmail.com.**

### Statutory Authority

3. This investigation concerns alleged violations of Title 18, United States Code, Sections 2252 and 2252A, relating to material involving the sexual exploitation of minors, which has been defined in Title 18 U.S.C. 2256, as an individual under 18 years of age.

  a. Under 18 U.S.C. Section 2252(a)(1) (transportation), 2252(a)(2) (receipt and distribution), and 2252(a)(4)(B) and 2252A(a)(5)(B) (possession), it is a federal crime for any person to transport, distribute, receive, and possess child pornography, as that term is defined by federal law. Further under 18 U.S.C. Section 2253(a)(3), a person who is convicted of an offense under 18 U.S.C. Section 2252 or 2252A, shall forfeit to the United States such person's interest in any property, real or personal, used or intended to be used to commit or to promote the commission of such offense.

### Computers and Child Pornography

4. "Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know that computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of

computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop ad reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography use membership-base/subscription-based websites to conduct business, allowing them to remain relatively anonymous.

5. In addition, based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know that the development of computers has also revolutionized the way in which those who seek out child pornography are able to obtain this material. Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage. More specifically, the development of computers has changed the methods used by those who seek to obtain access to child pornography in these ways:

6. Producers of child pornography can now produce both still and moving images directly from a common video or digital camera. The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can

be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

7. The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. A host computer is one that is attached to a network and serves many users. Host computers are sometimes operated by commercial Internet Service Providers (ISPs), such as America Online ("AOL") and Microsoft, which allow subscribers to dial a local number and connect to a network which is, in turn, connected to the host systems. Host computers, including ISPs, allow e-mail service between subscribers and sometimes between their own subscribers and those of other networks. In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web.

8. The Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii0 websites that offer images of child pornography. Those who seek to obtain images or videos of child pornography can use standard Internet connections, such as those provided by business, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous ad desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions involving those who wish to gain access to child pornography

over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache to look for "footprints" of the websites and images accessed by the recipient.

9. The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single floppy disk can store dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as a "hard drive") used in home computers has grown tremendously with the last several years. Hard drives with the capacity of 160 gigabytes are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

10. It should be noted that Internet Protocol (IP) numbers are unique identifiers leased to internet customers by their ISP's. Although IP numbers are capable of changing over time, only one (1) unique IP number can be assigned to a given customer's computer at any given time. Logs of these leased IP's (and their assigned customer accounts) are stored by ISP's routinely.

11. Your Affiant knows from his own experience and the training and experience of other law enforcement officers that Internet computers identify each other by an Internet Protocol or IP address. These IP addresses can assist law enforcement in finding a particular computer on the Internet. These IP addresses can typically lead the law enforcement officer to a particular Internet service company and that company can typically identify the account that uses the address to access the Internet.

## Background Regarding Gmail Accounts

12. Based on my knowledge and experience and information obtained from other law enforcement personnel with training and experience in this area, the following is known about Gmail accounts:

   a. Gmail is a free, advertising supported email service provided by Google. Users may access Gmail as secure webmail.

   b. Gmail initially started as an invitation-only beta release on April 1, 2004 and it became available to the public on February 7, 2007.

   c. Individual Gmail messages, including attachments, may be up-to 25 MB. Gmail has a search-oriented interface and a "conversation view" similar to an Internet Forum.

   d. Users can buy additional storage, shared among Gmail, Google Drive and Google+ Photos, through a monthly subscription plan. As of 2015, storage up to 15 GB is free, and paid plans are available for up to 30 TB for personal use.

   e. Google updated the Gmail inbox with tabs which allow the application to categorize the user's emails. The five tabs are: Primary, Social, Promotions, Updates and Forums. These tabs also appear in Gmail's mobile version.

   f. Gmail Mobile is a free service developed to provide access to Gmail from mobile devices. Gmail Mobile offers many of the features as Gmail delivered effectively to smaller, mobile screens.

   g. In 2010, Google commenced its new social networking tool, Google Buzz, which integrated with Gmail allowing users to share links and media, as well as status updates with social media platforms.

### Background Regarding Google Drive Accounts

13. Based on my knowledge and experience and information obtained from other law enforcement personnel with training and experience in this area, the following is known about Google Drive accounts:

   a. Google Drive is a file storage and synchronization service created by Google. It allows users to store files in the cloud, share files, and edit documents, spreadsheets, and presentations with collaborators.

   b. For Google Drive to synchronize files between the user's computer and Google Drive storage, the Google Drive 'client' software must be running on the users computer. The client communicates with Google Drive to synchronize data.

   c. Google Drive can be accessed offline on the Google Chrome browser via a Chrome application, which can be installed from the Chrome Web Store. Documents, spreadsheets, presentations and drawings can also be viewed and edited offline through standalone Chrome applications.

   d. Google gives every user 15 GB of online storage space, which is shared across three of its most-used services, Google Drive, Gmail, and Google+ Photos.

   e. Google Drive incorporates a system of file sharing in which the creator of a file or folder is, by default, its owner. The owner can regulate the public visibility of the file or folder. Files or folders can be shared privately with particular users having a Google account, using their @gmail.com email addresses. Sharing files with users not having a Google account requires making them accessible to anybody with the link. This generates a secret URL for the file, which may be shared via email, blogs, etc. Files and folders can also be made public on the internet, which

means that they can be indexed by search engines and thus can be found and accessed by anyone.

### Summary of the Investigation to Date

14. In November 2018, your Affiant received Cyber Tip Line Report Number 41797594 from the National Center for Missing and Exploited Children (NCMEC) in reference to media files containing what was believed to be child pornography being uploaded onto Google, Inc. email or storage services.

15. The information on the suspected media containing child pornography was submitted to the Cyber Tip Line by Google, Inc. on October 17, 2018. The incident information was categorized as being "Child Pornography (possession, manufacture, and distribution)" which was not viewed by NCMEC officials but was viewed by Google, Inc. representatives with the accompanied disclosure:

"With respect to the portion of this Cyber Tip containing the heading, "Was File Reviewed by Company?", when Google, Inc. responds "No", it means that while the contents of the file were not reviewed concurrently to making the report, historically a person had reviewed a file whose hash (or digital fingerprint) matched the hash of the reported image and determined it contained apparent child pornography." A total of approximately twenty-two (22) uploaded images of suspected child pornography were linked to the report.

16. Google, Inc. provided the Cyber Tip Line with the following information of the user being reported:

**Incident Type**: Child Pornography (possession, manufacture, and distribution)
**Incident Time**: October 16, 2018 at 08:19:41 UTC
**Name**: brion the to. carey
**Mobile Phone**: 479-263-5075
**Email Address: panterareaper@gmail.com** (Verified)
**IP Address**: 174.255.128.23

17. Your Affiant viewed all of the files linked to the Cyber Tip Line Report and determined all of them to in fact be images of child pornography. On December 6, 2018 your Affiant again viewed and described three (3) of these files as follows:

(a) **File Name: Google-CT-RPT-07b2c8da5e9a8fdd572c68a21d94511b**

This image depicts an approximate four (4) to six (6) year old prepubescent minor female child completely naked laying on her back with her legs spread wide, exposing her vagina and anus to the camera.

(b) **File Name: Google-CT-RPT-b314b393525e23bae455fd2fa2a587a3**

This image depicts an approximate four (4) to six (6) year old prepubescent minor female naked from the chest down laying on her back with her legs spread wide, exposing her vagina and anus to the camera. This is an adult male's hand spreading the minor female's buttocks with what is believed to be semen on top of her vagina.

(c) **File Name: Google-CT-RPT-25d82d70d09c139a7a6739875efed63a**

This image depicts an approximate four (4) to six (6) year old prepubescent minor female completely naked laying on her back with her legs spread wide, exposing her vagina to the camera.

18. Accompanied with Cyber Tip Line Report Number 41797594 was a NCMEC Initial Hash Value Comparison Report Number 76541-2018-HC which ran and compared the hash values of the twenty-two (22) suspected images of child pornography uploaded from the reported user through NCMEC's library database. The Initial Hash Value Comparison Report revealed eleven (11) of the user's uploaded files came back as images of previously identified/rescued children. Nine (9) of the user's uploaded files came back as being recognized as previously confirmed images of child pornography.

19. An internet search on the origin of the IP address 174.255.128.23 found it to be issued to the internet service provider Verizon Wireless. Documents received on or about December 6, 2018, from Verizon Wireless in reference to IP address 174.255.128.23 identified

the IP as being a Natting Router IP which can have multiple users at the same time. Verizon Wireless included a spreadsheet report containing all cellular telephone numbers that utilized the particular Natting Router IP address during the upload timeframe specified in the Cyber Tip Line Report. Your Affiant located approximately ten (10) phone numbers identified in the document that were one in the same telephone number, 479-263-5075, associated to the "brion the to. carey" user profile and the email address panterareaper@gmail.com. Documents received on or about December 14, 2018 from Verizon Wireless in reference to telephone number 479-263-5075 identified the device to be a TracFone Wireless telephone with no subscriber information on record.

20. Your Affiant conducted Department of Homeland Security (DHS) database queries on the account information associated to the Cyber Tip Line Report Number 41797594 which indicated, on or about November 6, 2018, Brion Adam CAREY was arrested in Washington County, Arkansas for criminal trespassing. The telephone number CAREY provided during his intake booking process was listed as being 479-263-5075 which is one in the same telephone number reported by Google, Inc. on the user account information outlined in the Cyber Tip Line Report. Further review of CAREY's intake booking data revealed he is believed to have a tattoo of "Pantera" on his right hand. The "Pantera" tattoo on CAREY's right hand is of investigative interest due to the Google, Inc. account user who uploaded the twenty-two (22) images of child pornography utilized an email address of **panterareaper@gmail.com**. The booking data also listed CAREY as having been issued an Arkansas Driver's License bearing the last four digits 8148 and a Social Security Administration Number (SSN) ending in the last four digits 6427. CAREY also showed to have been assigned the Federal Bureau of Investigations (FBI) Number ending in the last four digits 9JC0. At the time of his arrest, CAREY listed a

home address of 1555 Martin Luther King Jr. Boulevard in Fayetteville, Arkansas which is an old address for the 7hills Homeless Center in Fayetteville, Arkansas. Additional booking records obtained by your Affiant regarding CAREY's November 6, 2018 arrest revealed he was in possession of a ZTE wireless telephone when encountered by law enforcement.

21. DHS database queries conducted by your Affiant on the FBI Number ending in the last four digits 9JC0 associated to CAREY revealed numerous arrests in Michigan, Pennsylvania and Arkansas for narcotics possession, trespassing and Indecent Assault of a Minor. Your Affiant contacted and received a police report from the Pennsylvania State Police which showed in February 2010, CAREY was alleged to have fondled the eight (8) year old minor daughter of his then girlfriend. At the time of the disclosure by the minor victim, CAREY and his then girlfriend had stopped seeing one another and he had moved out of the area. Prosecution was not pursued by the Tioga County, Pennsylvania District Attorney's Office.

22. Your Affiant then conducted open source database queries on CAREY which resulted in locating a Facebook, Inc. social media user profile account of "Brion Adam Carey (Second Coming of Christ)". The Facebook, Inc user profile photograph was one in the same person documented in the Washington County, Arkansas intake booking data for CAREY. Further review of the account revealed CAREY is believed to be a habitual alcohol and narcotics abuser and possibly a panhandler or mendicant in the Northwest Arkansas area. CAREY appears to have been posting and uploading images/videos to his Facebook, Inc. profile account since approximately 2015 to November 2018 which shows he has ownership of some type of wireless mobile device with access to the internet. In a post, dated March 24, 2015, CAREY uploads a picture of himself sitting at a library with the comments of:

*"Sipping brandy and watching porn at the library lol jk I'm drinking vodka"*
*"The porn sucks because of the content block so I'm limited to soft core"*

*"Haha your right and here's the real bitch of it all...even if I manage to get an erection, I'M IN A FUCKING LIBRARY!"*

23.     On December 7, 2018, your Affiant conducted mobile surveillance of specific intersections located in the Northwest Arkansas area captured in the background of CAREY's Facebook, Inc. uploaded user profile photographs in attempts to locate the individual. At approximately 1700 hours, your Affiant positively identified CAREY panhandling on the corner of Martin Luther King Jr. Boulevard and Futrall Drive in Fayetteville, Arkansas. CAREY was with the same two dogs depicted in numerous photographs uploaded to his Facebook, Inc. user profile. Upon CAREY and his dogs departing the intersection, your Affiant continued mobile surveillance and observed CAREY and the dogs enter a wooded area on the southside of Hollywood Avenue where a tent was set up. Surveillance was then terminated. It is believed CAREY is homeless and does not have a permanent residence and utilizing open or unsecured wireless internet networks associated to businesses located on Martin Luther King Jr. Boulevard to access the internet with a cellular device.

## Conclusion

24.     Based on the foregoing information, probable cause exists to believe there is located on the computer servers of Google Inc., 1600 Amphitheatre Parkway, Mountain View, California 94043 evidence of violations of Title 18, United States Code, Section 2252. Your Affiant prays upon this honorable court to issue a search warrant to Google Inc., for the items set forth in attachment "B" (which is attached hereto and incorporated herein by reference), that constitute evidence, fruits, and instrumentalities of violation of Title 18, United States Code, Sections 2252.

_____
Gerald Faulkner, Special Agent
Homeland Security Investigations


Affidavit subscribed and sworn to before me this ___18th___ day of __December__ 2018


_____
Erin L. Wiedemann
United States Magistrate Judge